UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
JASWINDER SINGH, BALBIR NAGI,
MAN SINGH and NYC YELLOW CAB
DRIVERS ASSOCIATION, INC.,

          Plaintiffs,

  -against-                       **MEMORANDUM AND ORDER**
                                       No. 15-CV-5496-FB-VMS

MEERA JOSHI, THE NEW YORK
CITY TAXI AND LIMOUSINE
COMMISSION, BILL DE BLASIO and
THE CITY OF NEW YORK,

          Defendants.
------------------------------------------------x

*Appearances:*
*For the Plaintiffs:*
DANIEL L. ACKMAN, ESQ.
222 Broadway, 19th Floor
New York, New York 10038

ANDREW ST. LAURENT, ESQ.
Harris, St. Laurent &Chaudhry LLP
40 Wall Street, 53rd Floor
New York, New York 10005

*For the Defendants:*
ZACHARY W. CARTER, ESQ.
Corporation Counsel of the
City of New York
100 Church Street
New York, New York 10007

By:   SHERYL NEUFELD, ESQ.
       MICHELLE GOLDBERG-CAHN,
       ESQ.
       KAREN SELVIN, ESQ.
       SAMANTHA SCHONFIELD, ESQ.

*For Amici Curiae The Taxis for All
Campaign, The 504 Democratic Club, and
Disabled in Action*
DANIEL L. BROWN, ESQ.
Sheppard, Mullin, Richter & Hampton
30 Rockefeller Plaza
New York, New York 10112

**BLOCK, Senior District Judge:**

Earlier this year, the Court denied the plaintiffs' motion for a preliminary injunction. *See Singh v. Joshi*, 152 F. Supp. 3d 112 (E.D.N.Y. 2016). The factual background of the case and the Court's legal analysis are set forth in full in that decision. In sum, the Court upheld rules promulgated by the New York City Taxi and Limousine Commission ("TLC") to increase the availability of wheelchair-accessible yellow cabs against challenges under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. With respect to due process, it held that "the rulemaking afforded a meaningful opportunity to be heard and, therefore, that the rules resulting from it comport with due process." *Id.* at 125. With respect to equal protection, it held that the various distinctions created by the rules were rational and not arbitrary. *See id.* at 125-27.

The plaintiffs further challenged the regulations under (1) the constitutional prohibition against the taking of property without just compensation, and (2) Article 78 of the New York Civil Practice Law and Rules. The prior decision did not address those claims because they did not form the basis for the plaintiffs' request for preliminary injunctive relief.

The plaintiffs now move for reconsideration of several matters they claim the Court overlooked or misapprehended. They also move to certify a class, and for

summary judgment on two of their claims. For their part, the defendants move for summary judgment on all claims.

For the following reasons, the Court denies reconsideration and grants the defendants' motion for summary judgment.

## I. Plaintiffs' Motion for Reconsideration

In their motion for reconsideration, the plaintiffs first argue that the Court misapprehended the scope of TLC's regulatory authority over black cars. The prior decision states: "Given the substantial difference in the scope of TLC's regulatory authority over black cars versus yellow cabs, it is not apparent that TLC could require black-car licensees to use a particular vehicle by a particular date even if it wanted to." *Singh*, 152 F. Supp. 3d at 126. The plaintiffs argue that the TLC's authority over both yellow cabs and black cars is coextensive.

The Court's statement was accurate. While the plaintiffs are correct that TLC exercises jurisdiction over all for-hire vehicles in New York City, requiring black-car services to use a particular vehicle would be an unprecedented exercise of that jurisdiction. More importantly, the statement was not dispositive. As explained in the prior decision, even assuming that TLC *could* require black cars to use a particular vehicle, there is a rational basis for having different disability mandates. Since black cars operate through a dispatch system, customers can request an accessible vehicle in advance; since there is no corresponding mechanism for street hails, it was rational

for TLC to conclude that an increased number of yellow cabs was necessary. *See id.* ("The decision to impose new accessibility requirements on yellow cabs is . . . a recognition that street hailing is a key component of the taxi transportation system, particularly in central Manhattan[.]").

The balance of the plaintiffs' motion for reconsideration is centered on the distinction between yellow cabs and "e-hail" services such as Uber. They present this distinction in several ways. First, they argue that the Court failed to acknowledge a study by the Mayor's Office finding that "[w]ith the quick arrival of a car at the tap of a button, the distinctions that yielded different regulatory treatment across black cars and yellow cars are less relevant." Office of the Mayor, City of New York, "For-Hire Vehicle Transportation Study" (Jan. 2016), http://www1.nyc.gov/assets/ operations/downloads/pdf/ For-Hire-Vehicle-Transportation-Study.pdf. They then fault the defendants for failing to concede several of their allegations regarding the impact of e-hail services on the industry. Finally, they point to "new evidence" of that impact, including recent price cuts by Uber.

The Court noted in the prior decision that the number of black cars "has drastically increased due to the popularity of services such as Uber." *Singh*, 152 F. Supp. 3d at 118. And it readily agrees that e-hails blur the line between yellow cabs and black cars, with the latter now able to respond just as quickly—sometimes more quickly—to a customer standing on a street corner anywhere in New York City.

4

No matter how quickly a car hailed with Uber responds, however, it is still different from a street hail in one respect. The difference is, in essence, the same as that between yellow cabs and non-Uber black cars: Whether through a central dispatcher or a mobile app, there is a means by which a customer can request an accessible vehicle in advance, thus obviating the need for an increase in the sheer number of accessible black cars on the streets. At least, it was rational for TLC to so conclude. Thus, the Court adheres to its conclusion that the accessibility mandate for yellow cabs does not violate equal protection.

## II. Defendants' Motion for Summary Judgment

In the prior decision, the Court "surmise[d] that the likelihood of success on the merits—or, more accurately, the lack thereof—will ultimately be dispositive in this case." *Singh*, 152 F. Supp. 2d at 124. That prediction has proven correct, as nothing in the parties' summary judgment submissions leads the Court to change its conclusion that the accessibility regulations comport with due process and equal protection.[1]

---

[1] Although neither the parties nor the Court cited state law during the preliminary injunction proceedings, the Court's resolution of the federal equal-protection claim disposes of plaintiffs' parallel claim under the New York Constitution. *See Brown v. State*, 89 N.Y.2d 172, 190 (1996) ("The [equal protection] provision [of the New York Constitution] was intended to afford coverage as broad as that provided by the Fourteenth Amendment to the United States Constitution."). With respect to due process, the New York Court of Appeals has said that the state provision "readily support[s] a broader

5

What remains, then, are the plaintiff's claims for relief under the takings clauses of the state and federal constitutions and Article 78.

## A. Takings

The Constitution's Takings Clause was originally understood to apply only to "a direct appropriation of property" or "the functional equivalent of a practical ouster of the owner's possession." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992) (internal quotation marks and alterations omitted). In 1922, however, the Supreme Court first applied it to a regulation that impacted property rights: "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 416 (1922).

In the years since *Mahon*, the Supreme Court has categorized two types of regulations as *per se* takings: those that "compel the property owner to suffer a physical 'invasion' of his property," and those that "den[y] all economically beneficial or productive use of land." *Lucas*, 505 U.S. at 1015-16. All other regulations are

---

interpretation than the Federal provision," *Under 21 v. City of New York*, 65 N.Y.2d 344, 360 n.6 (1985), but that broader interpretation concerns the concept of state action, which is not at issue here. *See Sharrock v. Dell Buick-Cadillac, Inc.*, 45 N.Y.2d 152, 160 (1978) ("[T]he absence of any express State action language simply provides a basis to apply a more flexible State involvement requirement than is currently being imposed by the Supreme Court with respect to the Federal provision.").

evaluated on a case-by-case basis, with three factors of "particular significance": "(1) 'the economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.'" *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 224 (1986) (quoting *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)).[2]

Because the Takings Clauses prohibits only the taking of property "without just compensation," the Supreme Court has held that a takings claim is not ripe until the property owner has sought and been denied such compensation. *See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985). Thus, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.*

The plaintiffs concede that they have not sought compensation for the alleged diminished value of their medallions, but offer two reasons why they should be exempt from *Williamson County*'s exhaustion requirement. First, they argue that the requirement does not apply because they are seeking declaratory and injunctive

---

[2]As with equal protection and due process (apart from the concept of state action), federal takings jurisprudence applies equally to claims under the New York constitution. *See Seawall Assocs. v. City of New York*, 74 N.Y.2d 92 (1989) (considering federal and state takings claims together).

7

relief—in addition to money damages. In *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998), a four-justice plurality endorsed the proposition that the Declaratory Judgment Act "allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained." *Id.* at 521 (quoting *Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59, 71 n.15 (1978)). But the plurality's choice of words—"potentially uncompensable damages"—is underscored by its observation that a claim for compensation would, in the circumstances, "entail an utterly pointless set of activities." *Id.* (internal quotation marks omitted). As plaintiffs' claim for damages attests, there is no reason why just compensation would not remedy the alleged taking here.

Second, the plaintiffs claim that New York has no procedure for seeking just compensation for a taking of personal property. Although the state's eminent domain law applies to only "real property," N.Y. Em. Dom. Proc. L. § 104, there is also a direct cause of action available under the New York Constitution. *See McCormack Sand Co. v. Town of N. Hempstead Solid Waste Mgmt. Auth.*, 960 F. Supp. 589, 595 (E.D.N.Y. 1997) ("New York law provides procedures for obtaining compensation for the alleged taking [of personal property], including a cause of action for inverse condemnation under Article I, Section 7 of the New York Constitution."). In addition, the Second Circuit has described an Article 78 proceeding as a "constitutionally

sufficient" means for seeking just compensation. *Vandor, Inc. v. Militello*, 301 F.3d 37, 39 (2d Cir. 2002).

In sum, the plaintiffs must seek just compensation though available state procedures. Having failed to do so, their takings claims must be dismissed as unripe.

**B. Article 78**

The plaintiffs raise two claims under Article 78. They argue (1) generally, that the accessibility regulations are "affected by an error of law or . . . arbitrary and capricious or an abuse of discretion," N.Y.C.P.L.R. § 7803, and (2) specifically, that the regulations are contrary to New York City Administrative Code § 19-533, which requires TLC to approve a "hybrid electric vehicle" option "for immediate use by all current and future medallion owners."[3]

When he was a district judge, Judge Chin held that "State law does not permit Article 78 proceedings to be brought in federal court," and, therefore, that he did "not have the power to exercise supplemental jurisdiction over [the plaintiff's] Article 78 claims." *Cartagena v. City of New York*, 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003);

---

[3]Plaintiffs also incorporate § 19-533 into their equal protection challenge, arguing that the accessibility regulations "deny plaintiffs equal protection . . . by denying them the right to operate a hybrid vehicle in contrast to other medallion owners who continue to be afforded that right." Am. Compl. ¶ 178. In that respect, the availability of the "hybrid option" is simply one of the consequences of being an individual medallion owner selected in the lottery. The rational bases for distinguishing between individual and corporate owners and lottery winners and losers were set forth in the prior decision and reaffirmed above.

9

*accord Morningside Supermarket Corp. v. New York State Dep't of Health*, 432 F. Supp. 2d. 334, 346 (S.D.N.Y. 2006) ("It is doubtful, though, that claims under Article 78 are even amenable to a federal district court's supplemental jurisdiction.").

The position that federal district courts lack jurisdiction over Article 78 proceedings is not unanimous. *See Casale v. Metropolitan Transp. Auth.*, 2005 WL 3466405, at *6 (S.D.N.Y. Dec. 19, 2005) ("If [N.Y.C.P.L.R. § 7804] could deprive federal courts of jurisdiction, state legislatures, not Congress, would control the power of the federal judiciary."). But district courts *are* unanimous that "[t]he very nature of an Article 78 proceeding presents . . . compelling reasons" for declining to exercise supplemental jurisdiction, even assuming it exists. *Morningside Supermarket*, 432 F. Supp. 2d at 346 (citing 28 U.S.C. § 1367(c)(4)); *see also National Fuel Gas Supply Corp. v. Town of Wales*, 904 F. Supp. 2d. 324, 336 (W.D.N.Y. 2012) ("Thus, acting with or without discretion, district courts in this Circuit refuse to hear Article 78 claims.").

The Court agrees that the unique nature of an Article 78 proceeding warrants declining to exercise supplemental jurisdiction over it. That is particularly true here, since all of the plaintiffs' federal claims will be dismissed. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction [if] the district court has dismissed all claims over which it has original jurisdiction[.]").

### III. Conclusion

The plaintiffs' motion for reconsideration is denied and the defendants' motion for summary judgment is granted. Consequently, the plaintiffs' motion for partial summary judgment is denied and their motion to certify a class is denied as moot. The clerk is directed to enter judgment dismissing the case.

**SO ORDERED**.

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 15, 2016